# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN R. MILLER, JR., | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | Civil Action No. 10-0512 (ESH) |
| HILLARY RODHAM CLINTON, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff John R. Miller is a United States citizen who was employed by the Department of State as a safety inspector at the United States Embassy in Paris, France, when he was terminated by defendant Secretary of State Hillary R. Clinton solely on the basis that he had turned 65 years of age. Plaintiff claims that this violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Defendant has moved to dismiss for failure to state a claim on grounds that the ADEA is not applicable and for lack of subject matter jurisdiction on grounds that sovereign immunity bars plaintiff's claims for compensatory damages. Plaintiff has filed a cross-motion for summary judgment as to liability. As explained herein, the Court will grant defendant's motion to dismiss for failure to state a claim and deny all other motions as moot.

## BACKGROUND

The material facts of this case are not in dispute.[1] The Department of State hires three categories of employees: Foreign Service employees, Civil Service employees, and Locally

---

[1] While defendant disputes that plaintiff was terminated solely because he turned 65, asserting that he was terminated because his contract incorporated a mandatory retirement age of 65, this distinction is not material, as explained in note 2, *infra*.

Employed Staff. (Def.'s Mot. to Dismiss at 3.) Locally Employed Staff are individuals who are hired abroad at one of the Department's overseas embassies or consulates. (*Id.*) These individuals can either be hired as "members of the Service" under section 303 of the Foreign Service Act, 22 U.S.C. § 3943, or under the section 2(c) of the Basic Authorities Act, 22 U.S. C. § 2669(c), which authorizes the Secretary of State to "employ individuals or organizations, by contract, for services abroad."

Plaintiff was hired as Locally Employed Staff under section 2(c) of the Basic Authorities Act to work at the United States Embassy in Paris, France. (Compl. ¶¶ 1, 19.) Section 2(c) states in its entirety that the Secretary of State may

> employ individuals or organizations, by contract, for services abroad, and individuals employed by contract to perform such services shall not by virtue of such employment be considered to be employees of the United States Government for purposes of any law administered by the Office of Personnel Management (except that the Secretary may determine the applicability to such individuals of subsection (f) of this section and of any other law administered by the Secretary concerning the employment of such individuals abroad); and such contracts are authorized to be negotiated, the terms of the contracts to be prescribed, and the work to be performed, where necessary, without regard to such statutory provisions as relate to the negotiation, making, and performance of contracts and performance of work in the United States.

22 U.S.C. § 2669(c). Under the language authorizing the Secretary to "determine the applicability to such individuals . . . of any other law administered by the Secretary concerning the employment of such individuals abroad," defendant applied section 408 of the Foreign Service Act, 22 U.S.C. § 3968, to plaintiff. Section 408 by its terms governs the employment of foreign nationals and certain U.S. citizens appointed as "members of the Service," the other category of Locally Employed Staff hired by the Department of State.[2] (Def.'s Mot. to Dismiss

---

[2] Specifically, section 408 governs the employment of foreign nationals and United States citizens who are appointed as "members of the Service" under 22 U.S.C. § 3943, but are not family members of Government employees. *See* U.S.C. § 3951(c)(1).

2

at 5-6.) It requires defendant to establish compensation plans that are, "to the extent consistent with the public interest," "based upon prevailing wage rates and compensation practices (including participation in local social security plans) for corresponding types of positions in the locality of employment," with the exception that U.S. citizens are to be paid at or above the U.S. minimum wage regardless of local wage rates. 22 U.S.C. § 3968. Additionally, for U.S. citizens, defendant is to "define those allowances and benefits provided under United States law which shall be included as part of the total compensation package, notwithstanding any other provision of law" other than the U.S. minimum wage, the Social Security Act, and Title 26. *Id.*

For Embassy employees in Paris, France, the Local Compensation Plan ("LCP") contained a "Retirement" clause which stated that "[a]ge 65 is the mandatory age limit for all employees under the LCP" (Def.'s Mot. to Dismiss, Ex. B, at 1), as that was the prevailing practice among employers in France. (Def.'s Mot. to Dismiss at 7.) Defendant applied section 408 to plaintiff by incorporating this LCP into paragraph 5(2) of plaintiff's employment contract. (*Id.*, Ex. A, at 1.)

While plaintiff was working as an Embassy safety inspector under a one-year contract extension that was to expire in October 2007, he was notified that he would instead be terminated on July 23, 2007, as he would be turning age 65 on that date. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ["Pl.'s Opp'n"] at 5, 7.) Plaintiff sought, but was denied, a one-year extension of his employment. (Compl. ¶ 1.) On July 30, 2007, he filed a complaint of discrimination with the Department of State, alleging that his termination based on age violated the federal employees provision of the ADEA, 29 U.S.C. § 633a(a), which states that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) . . . in executive agencies . . .

3

shall be made free from any discrimination based on age." (Compl. ¶ 21, Ex. A, at 1.) On January 7, 2008, while his discrimination claim was pending before the Department of State, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶¶ 21-22.) The EEOC dismissed plaintiff's complaint for failure to state a claim, and the Department of State implemented that decision. (Compl. ¶ 22, Ex. B.)

Plaintiff then filed the instant lawsuit seeking, *inter alia*, compensatory damages, reinstatement, back pay, attorneys' fees, and declaratory and/or injunctive relief for defendant's alleged violation of the ADEA. (Compl. at 7-8.) Defendant has moved to dismiss for failure to state a claim on the ground that the ADEA does not apply to plaintiff. (Def.'s Mot. to Dismiss at 1-2.) Defendant also asserts that sovereign immunity bars any claim for compensatory damages. (*Id.* at 2.) Plaintiff has cross-moved for summary judgment as to liability. (Pl.'s Cross-Mot. for Summ. J. at 3-4.)

## ANALYSIS

It is undisputed that the federal employee provision of the ADEA, 29 U.S.C. § 633a, by its terms applies to plaintiff, and that under that provision, plaintiff was unlawfully terminated because of his age.[3] What is disputed is whether section 2(c) of the Basic Authorities Act, 22 U.S.C. § 2669(c), allows the Department of State to exempt plaintiff from the ADEA's protections. Plaintiff's position is that because section 2(c) specifies that 2(c) employees are not to be considered U.S. Government employees for purposes of OPM-administered laws, these employees must be considered U.S. Government employees for purposes of all non-OPM-

---

[3] Defendant argues that plaintiff was not fired "solely" because of his age, but because plaintiff's contract mandated retirement at age 65. (Def.'s Resp. to Pl.'s Statement of Material Facts not in Dispute ¶ 9.) However, this dispute does not create a genuine issue of material fact, as defendant does not suggest that the contract waived or otherwise affected plaintiff's rights under the ADEA. Thus, the issue is whether defendant was authorized to incorporate a mandatory retirement age into plaintiff's contract in the first place.

4

administered laws, including the ADEA. (Compl. ¶ 19.) Defendant argues that plaintiff misreads the language in section 2(c) regarding OPM-administered laws and that the remaining language authorizes defendant to exclude plaintiff's employment from the ADEA. (Def.'s Mot. to Dismiss at 11, 13.)

## I. LEGAL STANDARD

Statutory interpretation begins with the "language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 22 (D.C. Cir. 2010). Additionally, "statutes . . . are to be read as a whole, with 'each part or section . . . construed in connection with every other part or section.'" *American Fed'n of Gov't Employees, Local 2782 v. Fed. Labor Relations Auth.*, 803 F.2d 737, 740 (D.C. Cir. 1986) (citing 2A Sutherland, *Statutes and Statutory Construction* § 46.05 (4th ed. 1984)). Finally, the Court shall "'favor an interpretation which would render the statutory design effective in terms of the policies behind its enactment'" and "'avoid an interpretation which would make such policies more difficult of fulfillment.'" *United States v. Gen. Motors Corp.*, 518 F.2d 420, 438 (D.C. Cir. 1975) (quoting *Nat'l Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 689 (D.C. Cir. 1973)).

## II. STATUTORY HISTORY OF SECTION 2(C)

The present language of section 2(c) results from a series of amendments. Prior to 1984, section 2(c) only authorized the Secretary of State to hire "*aliens*, by contract, for service abroad." 22 U.S.C. § 2669(c) (1982). The 1984 amendments authorized the Secretary to employ U.S. citizens under this provision by substituting the words "individuals or organizations" for "aliens," but mandated that "individuals employed by contract to perform such services shall not by virtue of such employment be considered to be employees of the United States Government."

5

1984 Act to Combat International Terrorism, Pub. L. No. 98-533, § 303(a), 98 Stat. 2706, 2710 (1984).  The 1985 amendments modified this exclusionary language to say that these individuals would not, by virtue of such employment, be considered to be employees of the U.S. Government "for purposes of any law administered by the Office of Personnel Management (except that the Secretary may determine the applicability to such individuals of subsection (f) of this section and of any other law administered by the Secretary concerning the employment of such individuals abroad)."  Foreign Relations Authorization Act, Fiscal Years 1986 and 1987, Pub. L. No. 99-93, § 118(a), 99 Stat. 405, 412 (1985).  Finally, the 1994 amendments added the final clause: "and such contracts are authorized to be negotiated, the terms of the contracts to be prescribed, and the work to be performed, where necessary, without regard to such statutory provisions as relate to the negotiation, making, and performance of contracts and performance of work in the United States."  Foreign Relations Authorization Act, Fiscal Years 1994 and 1995, Pub. L. No. 103-236, § 180(b), 108 Stat. 382, 416 (1994).  Plaintiff and defendant attach different significance to these amendments and offer starkly different interpretations of section 2(c).

### III.  STATUTORY INTERPRETATION OF SECTION 2(C)

The Court will first determine whether, as plaintiff contends, 2(c) employees must, by virtue of section 2(c)'s language regarding OPM-administered laws, be considered U.S. Government employees for the purposes of all non-OPM-administered laws.  Because the Court must construe statutory provisions together, the resolution of this issue will influence the Court's determination as to whether, as defendant contends, other language in section 2(c) authorizes defendant to exempt plaintiff's employment from the protections of the ADEA.

### A. Status of 2(c) Employees for Purposes of Non-OPM-Administered Laws

It is undisputed that as of 1984, individuals hired under section 2(c) were not considered U.S. Government employees for any purpose. Plaintiff argues that the 1985 amendments, which added the language "for purposes of any law administered by the Office of Personnel Management" ("the first clause"), "drastically changed" this provision to provide that 2(c) employees *were* to be considered U.S. Government employees for the purposes of all laws *not* administered by OPM. (Pl.'s Opp'n at 3-4.) Such laws include the ADEA, which is administered by the EEOC. (*Id.*) Defendant argues that the first clause merely sets out one category of laws from which 2(c) employees are excluded, but does not rule out further exclusions. (Def.'s Mot. to Dismiss at 5.)

The plain language of section 2(c), when read in its entirety, does not entitle 2(c) employees to treatment as U.S. Government employees for the purposes of all non-OPM-administered laws. The second clause of section 2(c) explicitly gives the Secretary discretion to determine the applicability of "subsection (f) of this section [authorizing payment of tort claims that arise abroad in connection with Department of State operations] and of any other law administered by the Secretary concerning the employment of such individuals abroad." 22 U.S.C. § 2669(c). Thus, the plain language of the second clause establishes that 2(c) employees are not necessarily considered U.S. Government employees for all non-OPM-administered laws.

Furthermore, the legislative history of the second clause indicates that Congress did *not* wish for 2(c) employees to be categorically treated as U.S. Government employees for purposes of non-OPM-administered laws. The Conference Report to the 1985 amendments indicates that Conference Committee rejected the Senate's proposed amendments because they would have explicitly treated 2(c) employees as U.S. Government employees for the purposes of the Federal

7

Employees' Compensation Act (FECA).[4] The Committee instead chose the language "shall not . . . be considered to be employees of the United States Government for purposes of any law administered by the Office of Personnel Management," because "[b]y not specifying the status of these personnel under FECA, which is administered by the Department of Labor, it allows [that] Department to determine - as it has for many years in similar situations - whether an individual has the necessary employment relationship with the Federal Government to establish FECA coverage." 131 Cong. Rec. H7076-02 (1985) (letter from William E. Brock, Secretary of Labor, to Dante B. Fascel, Chairman, Committee on Foreign Affairs, House of Representatives (July 29, 1985), incorporated into Congressional Record of the Conference Report on the Foreign Relations Authorization Act, Fiscal Years 1986 and 1987).[5] Thus, it appears that the Conference Committee, in using the language regarding OPM-administered laws, did not intend for 2(c) employees to be categorically treated as U.S. Government employees for purposes of all non-OPM-administered laws. In fact, it intended just the opposite – that the status of 2(c) employees under non-OPM-administered laws would remain unspecified and left to the determination of the agencies administering those laws.

The third clause goes even further, providing that section 2(c) contracts are not bound by "such statutory provisions as relate to the negotiation, making, and performance of contracts and performance of work in the United States." 22 U.S.C. § 2669(c). Plaintiff argues that the language "such statutory provisions" refers back to OPM-administered laws, and therefore only

---

[4] Specifically, the Senate's amendment provided that individuals hired under section 2(c) would not be deemed employees of the U.S. Government except for the purposes of FECA and the Secretary of State's authority to administratively settle tort claims abroad. H.R. Rep. 99-240, at 63 (1985) (Conf. Rep.).

[5] The Congressional Record indicates that the letter from Secretary of Labor William E. Brock was consistent with the Conference Committee's consensus regarding the 1985 amendments to section 2(c). 131 Cong. Rec. H7076-02 (1985) (statement of Rep. Mica).

exempts 2(c) employment from OPM-administered laws relating to the negotiating, making and performance of contracts and performance of work in the United States. (Pl.'s Opp'n at 4.) Plaintiff cites *United States v. Bowen*, 100 U.S. 508 (1879), in support of the proposition that the word "such" must refer to an antecedent statutory phrase. (Pl.'s Reply Re: Pl.'s Cross-Mot. for Summ. J. [Pl.'s Reply"] at 3-5.) However, *Bowen* dealt with a statute that stated

> the fact that one to whom a pension has been granted for wounds or disability received in the military service has not contributed to the funds of the Soldiers' Home, shall not preclude him from admission thereto. But all such pensioners shall surrender their pensions to the Soldiers' Home during the time they remain there and voluntarily receive its benefits.

100 U.S. at 511. The issue was whether all pensioners had to forfeit their pensions while staying at the Soldiers' Home or only those who had not contributed to the Home's fund. The Court held the latter, because "such" pensioners could only refer back to the pensioners in the prior sentence who had not contributed to the Home's funds. *Id.* at 512. However, contrary to plaintiff's assertion, *Bowen* did not create a fixed rule that "such" always refers to a preceding statutory phrase. Rather, the Court specified that "the word [such], *as here used*," should be read to refer to the prior sentence because of the history of the Soldier's Home and the propriety of interpreting the statute so that only those who benefitted from the Home but had not contributed to its funds should have to forfeit their pensions during their stay. *Id.* at 512-13 (emphasis added).

Here, by contrast, "such" does not necessarily refer back to OPM-administered laws. Indeed, the Conference Report for the 1994 amendments calls into question such a restrictive reading as it broadly describes these amendments as "exempt[ing], where necessary, contracts for personal services abroad from statutory contracting provisions applicable in the United States." H.R. Rep. No. 103-482, at 171 (1994) (Conf. Rep.). Thus, according to the Conference

9

Report, 2(c) contracts are exempt, where necessary, from *all* statutory contracting provisions applicable in the United States, not merely those administered by OPM. Second, this reading is also consistent with the purpose of the amendments, which was to grant the Secretary "greater flexibility" in hiring U.S. citizens abroad. H. R. Rep. No. 103-482, at 182 (1994) (Conf. Rep.). And finally, plaintiff's reading would render the third clause entirely superfluous. The first clause mandates that 2(c) employees not be considered U.S. Government employees for purposes of OPM-administered laws, which would include OPM-administered laws relating to the negotiating, making, and performance of contracts and performance of work in the United States. Plaintiff's interpretation would violate the "cardinal principle of interpretation" that a statute must be construed "so that no provision is rendered inoperative or superfluous, void or insignificant." *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469, 472 (D.C. Cir. 2009) (internal quotations omitted).[6]

---

[6] Plaintiff argues that his interpretation does not render the third clause superfluous, since the first clause merely states that 2(c) employees are not, "by virtue of" their 2(c) employment, considered U.S. Government employees for purposes of OPM-administered laws. But it leaves unaddressed whether these employees might be U.S. Government employees by virtue of something *other than* their 2(c) employment, such as by virtue of their negotiation of a 2(c) contract or their performance of work under such a contract. (Pl.'s Reply Re: Pl.'s Cross-Mot. for Summ. J. at 7.) The Court will assume *arguendo* that a 2(c) contract may be negotiated and executed prior to, and therefore independently of, an individual's "employment" with the Department of State. Thus, the first clause would not necessarily exclude the application of OPM-administered laws relating to the negotiation and execution of contracts because such laws would not be applied "by virtue of" 2(c) employment. However, the "performance of work" language in the third clause remains superfluous. The "performance of work" under a 2(c) contract is coextensive with an individual's "employment" with the Department, and it defies logic to suggest that an OPM-administered law might apply to a 2(c) employee by virtue of his performance of work as separate from his employment with the Department. The cases cited by plaintiff do not suggest otherwise. These cases establish that some OPM-administered laws *pertain* to an individual's "performance of work" (*e.g.*, payment of overtime, *see Doe 1 v. United States*, 513 F.3d 1348, 1359 (Fed. Cir. 2008)). However, they do *not* suggest that these laws would apply *independently* of the individual's "employment." *See id.*; *Grandits v. United States*, 66 Fed. Cl. 519, 549 (2005); *Adams v. United States*, 65 Fed. Cl. 195, 204 (2005); *Sharpe v.*

For these reasons, the Court rejects plaintiff's assertion that he must be considered a U.S. Government employee for the purposes of all non-OPM-administered laws such as the ADEA.

**B. Defendant's Authority to Impose a Mandatory Retirement Age**

Having determined that section 2(c) does not itself entitle plaintiff to ADEA protection, the Court must determine whether defendant acted within her authority by imposing a mandatory retirement age. Defendant argues that the second clause, granting the Secretary the authority to determine the "applicability to such individuals of . . . any other law administered by the Secretary concerning the employment of such individuals abroad," authorizes defendant to apply section 408 of the Foreign Service Act, 22 U.S.C. § 3943, to plaintiff. Section 408, in turn, permits defendant to impose local compensation practices, including mandatory retirement ages. (Def.'s Mot. to Dismiss at 13.) Defendant further argues that the third clause, authorizing 2(c) contracts to be negotiated and executed "without regard to such statutory provisions as relate to the negotiation, making, and performance of contracts and performance of work in the United States," 22 U.S.C. § 2669(c), provides an independent basis for excluding plaintiff from the ADEA. (Def.'s Reply Mem. in Supp. of Def.'s Mot. to Dismiss and Opp'n to Pl.'s Cross-Mot. for Summ. J at 6.)

Plaintiff argues that the second clause does not authorize the Secretary to apply section 408 to plaintiff because plaintiff was not hired under that section. (Pl.'s Opp'n. at 14.) Plaintiff further contends that defendant's application of section 408 constitutes impermissible rule-making under the ADEA for which defendant is not entitled deference because defendant does not administer the ADEA, and because defendant's interpretation of section 2(c) was neither contemporaneous with the enactment of section 2(c)'s amendments nor sufficiently clear so as to

---

*Bair*, 580 F. Supp. 2d 123, 126 n.2 (D.D.C. 2008); *Forbes v. United States*, 84 Fed. Cl. 319, 325 (2008), *aff'd*, 333 Fed. App'x 573 (2009).

be understood by a reasonable person at the relevant time. (*Id.* at 14-16.) Finally, plaintiff, as previously noted, argues that the third clause only exempts 2(c) contracts from OPM-administered laws relating to the negotiation, making, and performance of contracts and performance of work in the United States. (*Id.* at 4.)

For the reasons explained above, the Court rejects plaintiff's overly narrow reading of the third clause. It furthermore agrees with defendant's assertion, which plaintiff does not dispute, that the ADEA, in banning age discrimination against federal employees, is a statutory provision relating to the performance of work in the United Sates. Therefore, under the third clause, it may be disregarded in the execution and performance of 2(c) contracts when necessary. For this reason, it appears that the third clause alone granted defendant the authority to incorporate a mandatory retirement age of 65 into plaintiff's contract.[7]

However, even if that were not the case, the second clause certainly gives defendant such authority. The second clause unequivocally gives the Secretary the authority to determine the applicability to 2(c) employees of *any other law* administered by the Secretary concerning the employment of such individuals abroad. It is undisputed that defendant administers section 408 of the Foreign Service Act of 1980, 22 U.S.C. § 3968, and that section 408 authorizes the Secretary to establish compensation plans that conform to local compensation practices including mandatory retirement ages. Thus, even though plaintiff was not hired under 22 U.S.C. § 3943,

---

[7] Plaintiff states that it is unverified that his contract contained a mandatory retirement age at the time of his termination. (Pl.'s Opp'n at 16 n.13.) However, plaintiff does not actually argue that his contract did *not* contain such a clause, nor does he give the Court any reason to believe that the contract extension under which he was working at the time of his termination would not contain that clause, given that the original contract had such a provision. (Def.'s Mot. to Dismiss, Ex. A, at 1; *id.*, Ex. B, at 1.)

12

the statute to which section 408 directly applies, defendant may apply this section to plaintiff by virtue of defendant's authority to apply the laws it administers to plaintiff's employment.[8]

This case is analogous to *Stewart v. Smith*, 673 F.2d 485 (D.C. Cir. 1982), where the statute at issue authorized agencies that employed law enforcement officers to set maximum ages for appointment to law enforcement positions. *Id.* at 487-88. There, as here, the statute itself did not impose an age limit, but rather it authorized the agency to do so. Plaintiff argues that *Stewart* is inapposite because that statute explicitly authorized agency determination of age limits, and a separate statutory provision imposed a mandatory retirement age on law enforcement officers. (Pl.'s Reply at 10.) However, the fact that section 2(c) does not explicitly authorize age limits, but instead grants the Secretary expansive authority to execute 2(c) contracts, does not render *Stewart* inapposite. And, the existence in *Stewart* of a separate statutory provision containing a retirement age does not change the fact that the statute at issue in *Stewart*, like the one here, authorized agencies to adopt age limits that might otherwise violate the ADEA.

Thus, plaintiff's argument that defendant engaged in impermissible rulemaking under the ADEA is unpersuasive. Defendant merely exercised her authority under section 2(c) to apply section 408, a law that defendant administers, to plaintiff's employment. Additionally, defendant's interpretation of section 2(c) is not an after-the-fact, lawyer-made construction that

---

[8] One might argue defendant is not authorized to apply section 408 to plaintiff because the second clause only authorizes defendant to apply laws "concerning the employment of *such individuals*," *i.e.*, 2(c) employees, and section 408 does not concern the employment of 2(c) employees. Rather, it concerns the employment of individuals hired under 22 U.S.C. § 3943. However, plaintiff does not make this argument, and the legislative history of the amendments which added the second clause does not support it. The Conference Report for the 1985 amendments, in discussing an amendment "identical in substance" to the 2(c) amendments, describes the amendments as authorizing "the Secretary of State to apply . . . authorities administered by the State Department" to individuals hired by contract for personal services abroad. H.R. Rep. 99-240, at 62-63 (1985) (Conf. Rep.). This language indicates that the amendment encompassed all authorities administered by the State Department, not merely those that already pertained to 2(c) employees.

13

could not have been understood by a reasonable person at the time. Rather, defendant's interpretation existed at the time that plaintiff's contract was executed, and the contract explicitly stated that it incorporated the LCP for the Embassy, which explicitly mandated retirement at age 65.

Thus, the Court concludes that under section 2(c) of the Basic Authorities Act, 22 U.S.C. § 2669(c), defendant was authorized to exempt plaintiff's employment from the protections of the ADEA.

## CONCLUSION

For these reasons, the Court will grant defendant's motion to dismiss for failure to state a claim and the above-captioned case will be dismissed with prejudice. Given the Court's resolution of this matter, plaintiff's cross-motion for summary judgment necessarily fails and all other motions are denied as moot. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: November 4, 2010